UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN BYRON COATS, SR.                                          CIVIL ACTION

VERSUS                                                         NUMBER: 14-1638

CAROLYN W. COLVIN,                                             SECTION: "N"(5)
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 11, 12).

Sean Byron Coats, Sr., *pro se* Plaintiff herein, filed the subject applications for DIB and SSI benefits on February 13, 2012, with a protective filing date of January 1 or 19, 2012, alleging an inability to work as of January 1, 2003.[1] (Tr. pp. 146-149, 150-155, 166, 200). In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as gout, back pain, high blood pressure, high cholesterol, diabetes, and leg problems. (Tr. p. 169). Plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process on March 20, 2012. (Tr. pp. 82-85). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on December 20, 2012 at which Plaintiff, who was represented by

---

[1] At the administrative hearing that was subsequently held on December 20, 2012 Plaintiff amended the alleged disability onset date to January 16, 2011 in light of work activity that he had engaged in up until that date. (Tr. pp. 26-27).

counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 86-88, 23-58). On February 21, 2013, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 8-22). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on May 23, 2014, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, Plaintiff articulates no specific challenge to the Commissioner's decision but instead presents a chronology of his medical treatment going back to an injury that occurred in October of 2006 while he was working for FEMA. (Rec. doc. 11). The Court thus construes Plaintiff's motion as presenting an overall challenge to the sufficiency of the Commissioner's decision. Relevant to the resolution of that issue are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 16, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, gout, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and

2

>    carry up to twenty pound occasionally, ten pounds frequently; to stand and/or walk five hours in an eight-hour workday; to sit about six hours in an eight-hour workday; and to occasionally climb.
>
> 6. The claimant is capable of performing [his] past relevant work as a delivery person and a truck rental clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. pp. 13, 14, 18).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392

(5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

> 1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. an individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.
>
> 4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.
>
> 5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). In determining whether a claimant is capable of performing the work that he has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of a claimant's prior work "… may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa*, 895 F.2d at 1022 (citing *Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The documentary evidence that was generated during the relevant time period[2/] begins with a note dated July 11, 2011 from the Urgent Care Clinic of the Medical Center of Louisiana at New Orleans ("MCLNO") where Plaintiff presented complaining of a toothache. Plaintiff was described as a diabetic who "… ha[d] let his [M]etformin lapse" and was somewhat adherent to diet control but had no exercise regimen. He was also noted to be hypertensive but was not compliant with his medications. The impression was a history of dental caries, hypertension, and diabetes mellitus ("DM"). The prescriptions for his various

---

[2/] Under 20 C.F.R. §§404.1512(d) and 416.912(d), the Commissioner is charged with developing the medical history of a DIB/SSI claimant "… for at least the 12 months preceding the month in which you file your application … unless you say that your disability began less than 12 months before you filed your application." As Plaintiff protectively filed his applications for Social Security benefits in January of 2012 and asserted an amended disability onset date of January 16, 2011, the relevant time period begins with the latter date.

medications were renewed, Plaintiff was placed on antibiotics, and he was referred to the Dental Clinic for follow-up care. (Tr. pp. 276-277). Plaintiff was subsequently seen at the MCLNO OMFS Clinic on August 25, 2011 where he underwent tooth extractions. (Tr. pp. 278-279).

On January 26, 2012, Plaintiff was seen for the first time by Dr. Yaw Twum for management of his DM, hypertension, and gout. Plaintiff was 37 years of age at the time, stood at 5'11", and weighed 261 pounds. Although Dr. Twum's treatment note is somewhat difficult to decipher, it appears that Plaintiff had a full range of motion in all extremities and that he reportedly exercised every day. A treatment plan was put into place and Plaintiff was to return in two months. (Tr. pp. 286-287).

Routine labwork was performed on February 23, 2012. (Tr. pp. 269-273). On that same date, Plaintiff completed the Administration's "Function Report-Adult" form that was designed to solicit information about how his conditions limited his activities. There, when asked to describe how his conditions limited his ability to work, Plaintiff indicated that he was unable to stand up for 15 minutes at a time on a "good day" due to his back problem. He also indicated that some of the medications that he took rendered him unable to drive or to operate machinery and that he was unable to walk for days or sometimes weeks when he experienced a gout flare-up, even after taking medication. When asked to describe an average day, Plaintiff stated that he rose in the morning, tended to his personal needs, did laundry, performed mild house cleaning and cooking, babysat until 3:00 p.m., bathed, and retired for the evening. Plaintiff had no problem with personal care needs and could prepare sandwiches and frozen dinners but was unable to perform yardwork. He could ride in a car and drive sometimes and was able to leave the house alone unless he was

suffering from medication side effects. Interests included reading and watching television but Plaintiff reportedly spent little time socializing. Plaintiff indicated that his various medical conditions affected a range of abilities, that he could only walk one block before needing to rest for 10 to 15 minutes, that he could stand for only 15 to 20 minutes at a time, and that he experienced difficulty reaching above shoulder level and climbing stairs. He was unable to handle stress well and was sometimes depressed. (Tr. pp. 191-199).

On March 16, 2012, Plaintiff underwent a consultative evaluation by Dr. Catherine DiGiorgio of the Southern Louisiana Disability Clinic. Presenting problems were as follows: 1) gout – diagnosed in 2003 with flare-ups every 90 days to the foot, knee, and ankle that were treated with medications as needed; 2) back pain – a bulging disk in the lower back diagnosed via MRI in 2006 with non-radiating 8/10 pain upon long standing, resolved after sitting, and treated with medication; 3) hypertension – diagnosed in 2009 and controlled through medication compliance; 4) hyperlipidemia – diagnosed in 2009 and controlled with medications; 5) DM – diagnosed in 2009, non-insulin-dependent and with no complications; and 6) leg – a recent flare in the right knee but no other problems. Plaintiff advised Dr. DiGiorgio that he had last worked as a forklift operator in a warehouse in 2010. He was reportedly unable to assist with household chores but was able to make his bed and sweep, although he had to sit frequently. Plaintiff could dress, feed himself and drive and he visited with family members but not friends. He estimated that he could lift 15 pounds, sit for 30 minutes, stand for 10 minutes, and walk 30 feet.

Upon mental status examination, Plaintiff was said to be "… cooperative at times …" and was able to follow commands but was believed to be malingering by both Dr. DiGiorgio and her x-ray technician. On physical examination, Plaintiff's right knee was slightly

warmer than the left but there was no atrophy, joint tenderness, swelling, redness, or increased warmth in any of the joints. Muscle strength was 3/5 in the right hip but otherwise 5/5 throughout with normal tone and movement and normal sensation in the extremities. Range of motion was full in all joints. Although Plaintiff was noted to walk with a "simple cane," he did not bear weight on any particular leg. He also "refused and had a poor effort when walking in heel, toes, and in tandem, an extremely poor effort." Grip strength was grossly normal. Dr. DiGiorgio assessed Plaintiff as being able to push, pull, and reach without difficulty or pain. However, he refused to crouch, squat, and stoop. Plaintiff was able to climb on and off the exam table independently and to dress and undress himself independently.

     Based on the results of her evaluation, Dr. DiGiorgio did not believe that Plaintiff was experiencing an acute exacerbation of gout and he had with him no medications confirming that he indeed had gout. In terms of the reported back pain, the doctor's examination revealed no deficits to account for same and she believed Plaintiff to be malingering. Hypertension, hyperlipidemia, and DM were all controlled with medication. Despite a report of a recent exacerbation of gout, Plaintiff denied any leg problems and there were no neurological, sensory, or motor deficits. Plaintiff's gait was characterized as abnormal but he did not bear weight on any particular leg and he had a full range of motion with no spasms, neurological deficits, or atrophy. Plaintiff had no medications with him for the doctor to document. Dr. DiGiorgio believed Plaintiff to be malingering as the symptoms that he exhibited did not correlate with his medical problems "whatsoever." The doctor further believed that, at most, Plaintiff may need a cane for severe gouty exacerbations but

not otherwise. Plaintiff denied any pain, complications, or problems and was observed to move about without apparent difficulty. (Tr. pp. 310-314).

Plaintiff was seen again by Dr. Twum on May 2, 2012 for complaints of right chest pain and shoulder pain for the previous two weeks with no history of trauma. A physical examination revealed tenderness to the right shoulder and right chest well. X-rays of the shoulder were to be taken and various medications were prescribed. (Tr. pp. 325-326). Plaintiff returned to Dr. Twum on May 24, 2012, this time complaining of right foot and lower back pain for two weeks and for follow-up of his other ongoing conditions. Plaintiff had joint swelling and tenderness of the right MTP joint and was observed to be limping and walking with the aid of a cane. The doctor's impression appears to have included an acute exacerbation of gout. Plaintiff's medications were adjusted and he was to return to the clinic in one week. (Tr. pp. 323-324). However, the next recorded appointment with Dr. Twum did not occur until July 3, 2012 with the stated purpose of the visit being " ... to have form completed." No negative physical examination findings were noted. The diagnosis was lumbar disc disease, DM, hypertension, and high cholesterol. Plaintiff's medications were adjusted and he was to return in two months. (Tr. p. 321-322).

As noted earlier, a hearing *de novo* before an ALJ went forward on December 20, 2012. After moving to formally amend the alleged onset date to January 16, 2011, Plaintiff's counsel made an opening statement in which he recalled Plaintiff's on-the-job injury with back involvement while working for FEMA. Subsequent to receiving workers' compensation benefits, Plaintiff had returned to work at a Walmart factory for a few months but was ultimately fired for taking excessive breaks. Despite having received nerve block injections, Plaintiff simply could not tolerate an eight-hour day secondary to pain and

9

radicular symptoms. In addition, he experienced blurry vision, weakness, and dizziness as a result of poorly-controlled diabetes as well as gouty arthritis to the feet, hands, and knees. (Tr. pp. 25-28).

Plaintiff then took the stand and was questioned by the ALJ. He was a resident of Slidell at the time who had completed 10 grades of formal education and had last worked at a Walmart warehouse on January 15, 2011, moving to Louisiana shortly thereafter and going under the care of Dr. Twum on January 26, 2012. At this point in the hearing, the ALJ noted that two of the healthcare providers Plaintiff had identified as seeing, East Jefferson Hospital and Ochsner Hospital, had no record of him going there for treatment. The ALJ was also critical of the treatment records of Dr. Twum, whose office was approximately a one-hour drive from Plaintiff's residence. (Tr. pp. 28-35).

Upon being tendered to his attorney for further questioning, Plaintiff testified that his most significant medical issue was his lower back which had been bothering him for three days but had actually begun after his on-the-job injury years earlier and was most noticeable in the morning. Although "shock treatment" was helpful in relieving his discomfort, epidural steroid injections, nerve blocks, and physical therapy were not effective. Plaintiff rated his pain as a 7/10 with medication and a 9/10 without medication and surgery had not been recommended due to his age. His shoulders had also been sore for the previous week. In addition to his lower back the other most problematic medical issue was his blood sugar which was hard to control despite medication and which resulted in slightly blurry vision, trembling hands, and thirstiness. As a supplement to medication, Plaintiff testified that his doctors had advised him to exercise but walking for more than 45 minutes at a time aggravated his back. Plaintiff further testified that there were times

10

when he could not afford all of his medications.  An additional issue was Plaintiff's gout, which flared up twice per month and took one week to bring under control with medication, during which time his foot was so sensitive that he could not walk on it, put a shoe on it, or even allow a fan to blow on it.  That condition had reportedly existed since it was first diagnosed in 2003 but Plaintiff was somehow able to work through it over the years, with the aid of medication. (Tr. pp. 35-42).

A typical day for Plaintiff consisted of rising in the morning, tending to his personal needs, watching television, reading, and preparing meals such as sandwiches, soups, and salads.  Plaintiff was able to put dishes in the dishwasher but did not wash dishes or do laundry, chores that were performed by his cousin.  He also did no yard work or grocery shopping.  Plaintiff, who was noted to be using a cane, estimated that he could stand for 10 minutes without it and could sit uninterrupted for 30 minutes at a time before experiencing back pain and having to walk around or lie down for relief.  Without the use of the cane, Plaintiff testified that he was unable to walk the length of a football field and if he stood up for longer than 10 minutes without something to lean against or to sit down on, he was prone to simply fall down.  Plaintiff could not comfortably lift more than 10 pounds and could not carry such a weight due to his back giving out.  In an eight-hour day, Plaintiff estimated that he spent three to four hours lying in the bed as it allowed him to relax more comfortably. (Tr. pp. 42-45).

On further questioning by the ALJ, Plaintiff testified that he stood at 5'11" tall, contrary to 2007/2008 records from Dr. Clark in which he was measured at 5'5".  Subsequent to his workplace injury, Plaintiff had received weekly workers' compensation benefits until he settled his claim in 2008, receiving $56,000.00 after his lawyer took his

fee.  That money had reportedly been invested for the benefit of his son.  Records of further treatment after the settlement of his workers' compensation claim were scant indeed and although some of those documented Plaintiff's lack of knowledge as to where to get his prescriptions refilled, none of them reflected any specific complaints of being unable to afford his medications.  Subsequent to relocating to Georgia to work for Walmart in 2010, Plaintiff returned to Louisiana in 2011, twice receiving dental care that summer before going under the care of Dr. Twum on January 26, 2012.  Based on a review of the medical records that had been obtained, the ALJ questioned the extent to which Plaintiff had been compliant with his DM medication and diet regimen.  A glitch with receipt of his Medicaid benefits had made it difficult for Plaintiff to obtain his medications on a regular basis and there were times when he presented to local emergency rooms just to get his prescriptions filled.  (Tr. pp. 45-53).

     Thomas Meunier, a VE, was the next witness to take the stand.  He began by first testifying as to the exertional and skill demands of Plaintiff's past work as a warehouse worker, porter, deliveryperson, and truck rental clerk.  The ALJ then posed a hypothetical question to Meunier which assumed an individual of Plaintiff's age, education, and work experience who could perform light-level work with occasional climbing.  Faced with that hypothetical question, the VE testified that the individual described therein could perform Plaintiff's past jobs as a deliveryperson and truck rental clerk.  To the hypothetical question as originally framed, if the individual was required to stand and/or walk for five hours out of an eight-hour day, the VE testified that the two past jobs could still be performed as they allowed a sit/stand option.  (Tr. pp. 53-57).  After being tendered to Plaintiff's attorney for further questioning, Meunier acknowledged that there would be no work that could be

performed if an individual had to lie down or recline for three hours out of an eight-hour workday. (Tr. pp. 57-58).

After considering the evidence before him, on February 21, 2013, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Although Plaintiff suffered from severe impairments in the form of degenerative disc disease of the lumbar spine, hypertension, gout, and DM, those conditions, whether considered singly or in combination, did not satisfy the criteria of any of those set forth in the Listing of Impairments. The ALJ found that Plaintiff had the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently; to stand and/or walk for five hours in an eight-hour workday; to sit for about six hours in an eight-hour workday; and to occasionally climb. Relying on the testimony of the VE, because Plaintiff's limitations would not prevent him performing his past relevant work as a deliveryperson or a truck rental clerk, he was found to be not disabled at the fourth step of the §§404.1520/416.920 analysis. For the reasons that follow, the Court believes that substantial evidence supports the decision of the Commissioner which should thus be affirmed.

In evaluating the evidence before him and in assessing Plaintiff's residual functional capacity to work, the ALJ recited the requirements of 20 C.F.R. §§404.1529 and 416.929 that a claimant's subjective complaints and symptoms be adequately supported by objective proof. (Tr. pp. 14-15). After summarizing Plaintiff's hearing testimony, the ALJ found that Plaintiff's subjective complaints were not credible to the extent alleged as they were not sufficiently supported by the objective evidence of record. As respects limitations due to low back pain, the ALJ noted that Plaintiff had sought and received very little

treatment for that condition since the alleged onset date of January 16, 2011.  (Tr. p. 15). Indeed, of the scant medical records that were generated subsequent to that alleged onset date, only Dr. Twum's note of May 24, 2012 reflects a presenting complaint of low back pain and even then, it was only for the previous two weeks.  When Plaintiff returned to Dr. Twum on July 3, 2012 to have a form completed, no negative physical examination findings were noted.  The lack of ongoing treatment may properly be considered by an ALJ in determining a claimant's disability status.  *Fraga v. Bowen*, 810 F.2d 1296, 1303 (5th Cir. 1987).

       The ALJ also observed that Plaintiff was not fully compliant with his hypertension and DM medication regimens.  During the relevant time period, Plaintiff presented to the MCLNO Urgent Care Clinic on July 11, 2011 for complaints of a toothache and reported that his DM medication had lapsed and that he had been non-compliant with his hypertension medication.  As the ALJ would subsequently remark during the course of the administrative hearing, nothing in the medical records that were before him indicated that said lapse in or non-compliance with medication was attributable to impecuniousness.  The fact that Plaintiff was also not fully compliant with diet and exercise routines, regimens that are not entirely dependent on financial wherewithal, also tends to undercut the suggestion that non-compliance was due to financial constraints.  In any event, there is no evidence that Plaintiff was disabled with or without regular medical treatment.  *Villa*, 895 F.2d at 1024.

       As for limitations resulting from gout, on only one occasion during the relevant time period, May 24, 2012, was a diagnosis of that condition made in response to an acute exacerbation. By the time that Plaintiff returned to Dr. Twum on July 3, 2012, no mention of gout-related limitations was made.  In fact, as far as the relevant medical records reflect,

no doctor ever advised Plaintiff to limit his activities in any way, another proper consideration in the Social Security disability context. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). To the contrary, Plaintiff testified at the administrative hearing that his doctors had advised him to exercise to minimize the effects of DM. Diabetes being a remediable condition, it is not considered to be a disabling condition under the Social Security Act. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)(citing *Epps*, 624 F.2d at 1270).

In finding that Plaintiff was not disabled, the ALJ accorded significant weight to the opinions of Dr. DiGiorgio whose medical report is by far the most comprehensive one that appears in the record below. Despite Plaintiff's claims of being able to sit for only 30 minutes, to stand for only 10 minutes, and to walk only 30 feet, the doctor found no objective findings supportive of such limitations as Plaintiff had 3/5 strength to the right hip but otherwise 5/5 strength throughout with normal muscle tone, movement, and sensation and a full range of motion in all joints with no spasm, atrophy, or neurological deficits. The absence of any more significant findings may properly be considered by an ALJ in adjudicating a claimant's disability status. *Clayborne v. Astrue*, 260 Fed.Appx. 735, 737 (5th Cir. 2008); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).

The ALJ also noted that the daily activities that Plaintiff described were at odds with his testimony of extensive limitations. Plaintiff could tend to his personal needs without assistance, could perform various household chores and prepare meals, could go outside daily and drive, and could shop for two hours at a time once per month. He was able to drive to Dr. Twum's office that was one hour away despite his testimony of being able to sit for only 30 minutes. In the Function Report that he completed and which the ALJ may

15

properly consider, *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1989), Plaintiff indicated that he spent the better part of an average day babysitting. Plaintiff's ability to engage in such activities is not indicative of someone who is able to perform no work activities whatsoever. *Fraga*, 810 F.2d at 1302 (ability to walk approximately one-half block, to attend church, and to drive 20 to 30 miles per week supported finding of "not disabled"). Based upon the results of her evaluation, Dr. DiGiorgio was left with the firm impression that Plaintiff was malingering and she essentially imposed no limitations on his activities. Giving Plaintiff the benefit of the doubt, the ALJ nonetheless assessed Plaintiff as having the residual functional capacity to perform a limited range of light-level work. In light of the body of evidence that was before him, that determination was not an unreasonable one. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Essentially, the ALJ gave Plaintiff's subjective complaints diminished weight because they were unsupported by the objective evidence as the law requires. That satisfies his duty here. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Augustine v. Barnhart*, No. 01-CV-2685, 2002 WL 927797 at *4 (E.D. La. May 7, 2002); *Collins v. Callahan*, No. 96-CV-3546, 1998 WL 118082 at *3-4 (E.D. La. March 17, 1998).

As noted earlier, subsequent to the submission of the cross-motions for summary judgment in this case, Plaintiff was granted leave to file additional medical records from another healthcare provider, Dr. Diana McDermott of the St. Bernard Community Health Center, none of which were presented to the Commissioner during the pendency of the administrative proceedings below. The Court can order that a case be remanded to the Commissioner to consider such new medical evidence "… only upon a showing that there is

16

new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). In order to justify a remand, three criteria must be satisfied. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). First, the evidence must be "new" and not merely cumulative of what is already in the record. *Szubak v. Secretary*, 745 F.2d 831, 833 (3rd Cir. 1984). Second, the evidence must be "material" such that there is a "reasonable possibility" that the evidence would have changed the outcome of the Commissioner's decision. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)(citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). The materiality requirement also contains a temporal element that the evidence relate to the time period for which benefits were denied and not merely concern a subsequently-acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567; *Latham*, 36 F.3d at 482. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the prior administrative record. *Pierre*, 884 F.2d at 803.

The medical records that Plaintiff has provided to the Court consist of a "To Whom It May Concern" letter from Dr. McDermott dated March 4, 2015, a brief summary of Plaintiff's office visits to the doctor between May 14, 2013 and March 4, 2015, the records of eleven visits which occurred on various dates between January 30, 2014 and March 4, 2015, and the records of diagnostic tests that were conducted between December 2, 2013 and January 16, 2015. (Rec. doc. 13-2). Dr. McDermott's "To Whom It May Concern" letter carries no special significance, as it embraces the ultimate issue that is reserved to the Commissioner in the first instance (*i.e.*, whether Plaintiff is disabled). 20 C.F.R. §§404.1527(d)(1), 416.927(d)(1). Although the records that have been provided to the

17

Court do contain an "encounter summary" from Dr. McDermott documenting Plaintiff's office visit on March 4, 2015, the stated reason for the visit was simply to obtain a medication refill and to obtain paperwork to provide to his caseworker. (Rec. doc. 13-2, p. 3). The diagnosis was depression and DM, characterized as uncomplicated but uncontrolled at that time. With respect to the former condition, depression, it was never identified by Plaintiff as a disabling condition in his application for Social Security benefits and related paperwork and the administrative record contains no evidence of treatment from a psychiatrist or psychologist during the relevant time period. Most importantly, all of the records that Plaintiff has provided to the Court were generated after the ALJ's decision and the majority of them document treatment that was rendered after the conclusion of the administrative proceedings below. The records thus do not relate to the time period at issue in this litigation and fail the temporal element of the materiality requirement because they concern subsequently-acquired conditions or the deterioration of conditions that were previously and properly found to be non-disabling. *Leggett*, 67 F.3d at 567; *Latham*, 36 F.3d at 482. While such records may form the subject matter of a new, separate application for Social Security benefits, they do not warrant a remand here.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

New Orleans, Louisiana, this __1st__ day of _____September_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE